UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

_____
                                   )
QUING CHEN,                        )    No. C07-103RSL
                                   )
                  Plaintiff,       )    ORDER DEFERRING BOTH
       v.                          )    PARTIES' MOTIONS FOR
                                   )    SUMMARY JUDGMENT
F. GERALD HEINAUER, *et al.*,      )
                                   )
                  Defendants.      )
_____)

## I. INTRODUCTION

This matter comes before the Court on plaintiff's "Motion for Summary Judgment" (Dkt. #18) and "Defendants' Cross-Motion for Summary Judgment" (Dkt. #21). On January 23, 2007, plaintiff, proceeding pro se, filed a Petition for Writ of Mandamus alleging that defendants have unreasonably delayed the processing of her I-485 application for adjustment of status and requesting that the Court mandamus defendants to adjudicate her application. See Dkt. ##1, 2. In her motion for summary judgment, plaintiff now seeks an order requiring defendants to adjudicate her status adjustment application. In opposition, defendants cross-move for summary judgment contending that the government has acted reasonably in processing plaintiff's application. For the reasons discussed below, the Court defers both parties' motions for

ORDER DEFERRING BOTH PARTIES'
MOTIONS FOR SUMMARY JUDGMENT

summary judgment.[1]

## II.  FACTUAL BACKGROUND

Plaintiff Qing Chen (hereinafter "plaintiff"), a citizen of the People's Republic of China, seeks adjudication of her pending Form I-485 Application for Adjustment of Status so that she may adjust her U.S. immigration status to that of Lawful Permanent Residents (LPR or "green card" holder).  Plaintiff filed her I-485 form with United States Citizen Immigration Services ("USCIS") Nebraska Service Center on February 11, 2003.  See Dkt. #21, Ex. E (Heinauer Decl.) at ¶3.

When an individual files an I-485 application, USCIS conducts several forms of background checks to ensure that the applicant is eligible to have their status adjusted to lawful permanent resident and that he or she is not a risk to national security or public safety.  Id. at ¶9.  One of those checks is an FBI fingerprint check for relevant criminal history records on the alien.  Id.  The fingerprint check must be less than fifteen months old at the time the application is adjudicated.  Id. at ¶13.  Plaintiff was fingerprinted on May 17, 2003, November 11, 2004, March 21, 2006, and July 16, 2007 to ensure that her fingerprint checks remain current.  Id.

Another check is conducted against the Interagency Border Inspection System ("IBIS"), which contains information related to persons who are wanted or under investigation for serious crimes of suspected terrorism-related activity.  Id. at ¶9.  Plaintiff's preliminary IBIS background checks have been completed.  Id. at ¶14.  Any remaining IBIS checks, if necessary, will be performed at the time of final adjudication of her application.  Id.

In addition to the fingerprint and IBIS background checks, an FBI name check is run

---

[1] In a separate action in this judicial district styled Chen v. Chertoff, et. al., Case No. C06-1760TSZ, the Honorable Thomas S. Zilly analyzed some of the same legal arguments that defendants raise here in their response and cross-motion for summary judgment.  See Dkt. #20 in C06-1760TSZ (filed August 30, 2007).  In the interest of judicial economy, this Court incorporates a substantial part of the well-reasoned opinion of Judge Zilly into this order, and for the convenience of the parties and for clarity in the record, the Court reiterates the legal analysis below.

ORDER DEFERRING BOTH PARTIES'
MOTIONS FOR SUMMARY JUDGMENT                -2-

against FBI investigative databases.  Id. at ¶9; see also Dkt. #21, Ex. D (Cannon Decl.) ¶¶4-12 (describing name check process).  The FBI received a request for a "name check" investigation for plaintiff from USCIS on or about March 21, 2003.  See Dkt. #21, Ex. D (Cannon Decl.) at ¶39.  The name check has not been completed by the FBI, thus plaintiff's application remains pending.  Id.

The FBI is performing the name checks in response to USCIS's request in accordance with the procedures outlined in the Cannon Declaration (described in part below).  See Dkt. #21, Ex. D (Cannon Decl.) at ¶39.  The results of the name checks will be forwarded to USCIS in Washington, D.C., in due course, in accordance with the FBI's normal protocol.  Id.  The FBI cannot provide a specific or general time frame for completing any particular name check submitted by USCIS.  Id. at ¶37.

Historically, approximately 68 percent of the name checks submitted by USCIS are electronically checked and returned to USCIS as having "No Record" within 48-72 hours.  Id. at ¶13.  A "No Record" indicates that the FBI's Universal Index database contains no identifiable information regarding a particular individual.  Id.  For the remaining name check requests, a manual name search typically completed within 30-60 days historically identifies an additional 22 percent of the USCIS requests as having "No Record," for a 90 percent overall "No Record" response rate.  Id. at ¶14.  Follow-up on the remaining 10 percent requires retrieving and reviewing electronic and paper records.  Id.

There are numerous factors that contribute to delays in the processing of name check requests.  Id. at ¶24.  One is the volume of incoming name checks.  As of the end of fiscal year 2006, the National Name Check Program had over 364,000 pending USCIS name check requests.  Id.  The number of "hits" on a name when it is first reviewed may further contribute to a delay in processing a name check request.  Id. at ¶25.  The processing of common names and the accessibility of the FBI record needed for review also contributes to a delay; a record could be at one of over 265 possible locations across the country.  Id. at ¶¶ 26-27.  None of these

reasons for delay, however, has been cited as a reason why plaintiff's name check has been delayed.

As directed by USCIS, the FBI processes name check requests on a "first in, first out" basis, unless USCIS directs that a name check be expedited. Id. at ¶18. Expedited name requests mean that an employee is not available to work on a normal name check request. Id. at ¶28. An alien who has applied for adjustment of status may apply for and obtain employment authorization for the time the application is pending. See Dkt. #21, Ex. E (Heinauer Decl.) at ¶19. Most applicants for adjustment of status may also apply for and obtain advance parole to enable them to travel abroad during the pendency of their application. Id. Plaintiff currently holds an employment authorization document valid through November 16, 2007 and an advance parole travel document valid to December 7, 2007. Id.

### III.  LEGAL DISCUSSION

Though plaintiff has not stated so explicitly, the Court construes her mandamus action as being made pursuant to Sections 555(b) and 706(1) of the APA, which requires plaintiff to demonstrate that USCIS unreasonably delayed the processing of her application. See 5 U.S.C. § 555(b) ("With due regard for the convenience and necessity of the parties or their representatives and within a reasonable time, each agency shall proceed to conclude a matter presented to it."); 5 U.S.C. § 706(1) (providing that courts shall "compel agency action unlawfully withheld or unreasonably delayed"); see Yu v. Brown, 36 F. Supp. 2d 922, 928 (D.N.M. 1999) (applying the same standards to assess the merits of claims of unreasonable agency delay that seek either mandamus or a mandatory injunction under the APA, or both). Thus, the critical question before the Court is whether there has been an unreasonable delay by USCIS in processing plaintiff's application to adjust status.

Section 706 of the APA "leaves in the courts the discretion to decide whether agency delay is unreasonable." Forest Guardians v. Babbitt, 174 F.3d 1178, 1190 (10th Cir. 1999). The Ninth Circuit has adopted a six-factor test for determining when an agency delay is unreasonable

under 5 U.S.C. § 706(1):

> (1) the time agencies take to make decisions must be governed by a 'rule of reason';
>
> (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason;
>
> (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake;
>
> (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority;
>
> (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and
>
> (6) the court need not 'find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.'

Brower v. Evans, 257 F.3d 1058, 1068 (9th Cir. 2001) (quoting Telecomms. Research & Action v. FCC ("TRAC"), 750 F.2d 70, 80 (D.C. Cir. 1984) (six factors referred to as the "TRAC factors")).

The first TRAC factor requires an agency to govern decision-making with a rule of reason. Defendants argue that the FBI's "first in, first out" policy is deserving of deference, and that the FBI needs time to perform an "accurate and thorough" check. See Response at 7. The FBI has not, however, provided any evidence confirming that plaintiff's check has been processed in a "first in, first out" fashion, nor has the FBI provided any evidence as to why it needs many years to conduct an "accurate and thorough" check on plaintiff.

The second TRAC factor requires deference to a statutory or regulatory timetable. Defendants argue that there is neither a statutory nor regulatory timetable in place for the FBI name check or USCIS's adjudication of an application to adjust status and that in the absence of any guidelines, the Court should consider the factors that contribute to the backlogs faced by the FBI and USCIS. See, e.g., Dkt. #21, Ex. D (Cannon Decl.) at ¶¶ 19-20 (describing growth of the name check program and the implementation of more thorough searches since November 2002

ORDER DEFERRING BOTH PARTIES'
MOTIONS FOR SUMMARY JUDGMENT          -5-

due to heightened national security concerns).

Several courts facing the same issue have concluded that "[a]lthough Congress has not established a mandatory time frame for the USCIS to complete the adjudication, Congress sets a normative expectation in 'The Immigration Services and Infrastructure Improvements Act of 2000' of a reasonable processing time for an immigrant benefit application as no more than 180 days after initial application." Konchitsky, 2007 WL 2070325 at *4 (citing 8 U.S.C. § 1571); Abbasfar v. Chertoff, 2007 WL 2409538 at *3 (N.D. Cal. Aug. 21, 2007) ("8 U.S.C. § 1571 provides a meaningful standard for the pace of adjudication of adjustment of status applications"). The Court finds this authority persuasive.

The third TRAC factor provides that delays are less tolerable when human health and welfare are at stake, as opposed to economic regulation. See Singh v. Still, 470 F. Supp. 2d 1064, 1069 (N.D. Cal. 2006) (finding human health and welfare to be at stake in case involving delay of I-485 application to adjust status). Defendants argue that this third factor overlaps with the fifth TRAC factor, the nature and extent of the interests prejudiced by the delay. See Response at 8. Defendants characterize the prejudice to plaintiff as mere inconvenience, and point out that plaintiff may receive employment authorization and advance parole to allow her to travel abroad during the pendency of her application. Id. at 9. Defendants emphasize that plaintiff's interests are minimal as compared to the security interests of the nation, particularly in the post-9/11 era. Id. Plaintiff argues that the ongoing delay has caused her mental anguish and an ongoing loss of freedom. Motion at 2; see also Singh, 470 F. Supp. 2d at 1070 ("Respondents' delay impacts Mr. Singh's ability to seek United States citizenship and all the rights and privileges attendant thereto.").

The fourth TRAC factor requires the Court to consider the effect of expediting delayed action on agency activities of a higher or competing priority. Defendants argue that expediting delayed agency action will intrude on the agency's discretion to fulfill its highest priority of safeguarding the nation. See Response at 9. Defendants also contend that moving some

ORDER DEFERRING BOTH PARTIES'
MOTIONS FOR SUMMARY JUDGMENT         -6-

individuals to the front of the queue would simply move that group ahead of others who also had been waiting, resulting in no net gain in processing. Id. at 10.

The sixth TRAC factor notes that the Court need not find any impropriety on the agency's part in order to hold that agency action is unreasonably delayed. As discussed below, because the government has provided no particularized reason for the name-check delay as applied to plaintiff, the Court, without more, cannot assess this factor.

Overall, defendants have failed to put forth any facts specific to plaintiff's name check. "What constitutes an unreasonable delay in the context of immigration applications depends to a great extent on the facts of the particular case." Gelfer v. Chertoff, 2007 WL 902382 at *2 (N.D. Cal. Mar. 22, 2007) (citation omitted). Courts within the Ninth Circuit in similar cases have denied Rule 12(b)(6) motions to dismiss brought by the Government where USCIS has simply pointed to the FBI's failure to complete the name check, and where there were no reasons why the application was "particularly troublesome." Id. (more than two-year delay not reasonable as a matter of law); see also Konchitsky, 2007 WL 2070325 at *6 ("without a particularized explanation for the delay . . . more than two year delay of plaintiff's application [is] unreasonable as a matter of law"); Mazouchi v. Still, 2007 WL 2070324 at *5 (N.D. Cal. July 13, 2007) (same, as applied to four year delay); Liu v. Chertoff, 2007 WL 2023548 at *4 (E.D. Cal. July 11, 2007) (two-and-a-half year delay not reasonable as a matter of law, noting absence of "a more particular explanation by Defendants as to the cause of the delay," despite evidence of large volume of applications received and the extensive background checks required to process them); Qiu v. Chertoff, 2007 WL 1831130 at *3 (N.D. Cal. June 25, 2007) (no explanation, other than pending FBI name check, why application "stagnant" for three years); Huang, 2007 WL 1831105 at *2 (despite national security concerns and increased security checks since 9/11, a more than two-year delay is unreasonable as a matter of law if there is no particular explanation as to the cause of the delay).

One case out of the Northern District of California granted summary judgment in favor of

ORDER DEFERRING BOTH PARTIES'
MOTIONS FOR SUMMARY JUDGMENT           -7-

plaintiff, and ordered USCIS to complete the adjudication of the application, where USCIS failed to provide specific reasons for the delay. See Singh, 470 F. Supp. 2d at 1065, 1072 (noting the lack of specifics about "the issues requiring further inquiry" in declarations submitted by USCIS, and, alternatively, USCIS's failure to provide information via in camera review). In Singh, the Court stated that although "national security must be considered a competing priority of the highest order[,] . . . the mere invocation of national security is not enough to render agency delay reasonable per se." Id. at 1069.[2]

The Government argues that "[m]any courts have refused to grant relief under the APA, even when naturalization or other immigration applications were pending for significant time periods." See Response at 11-12. Defendants rely on three district court cases from outside the Ninth Circuit, each of which can be distinguished. In Espin v. Gantner, the Court held that it lacked subject matter jurisdiction to compel agency action on a pending application to adjust status, finding that the action is "wholly discretionary." 381 F. Supp. 2d 261, 265 (S.D.N.Y. 2005). As previously noted, this Court, as well as other Courts in the Western District of Washington, have concluded that USCIS's action to adjudicate applications to adjust status is non-discretionary and, accordingly, have held that there is subject matter jurisdiction. The Espin Court also dismissed the claim for failure to state a cognizable claim based on a "limited resources" and "substantial caseload" rationale that has not been adopted by district courts within the Ninth Circuit in the absence of a particularized showing as to the individual

---

[2] It is noteworthy, however, that, at the time summary judgment was granted in favor of Mr. Singh, Mr. Singh's FBI name check had been expedited as a result of the litigation and had cleared. Other distinguishing aspects of the Singh case are that: (1) Mr. Singh had waited seven years for adjudication, in comparison to plaintiff's more than four years; (2) USCIS was partially to blame for the delay (in addition to the FBI) because USCIS had taken two-and-a-half years to initiate the name check with the FBI, and (3) Mr. Singh's application to adjust status was based in part on a grant of asylum, which meant that the government had an opportunity to raise national security concerns before an immigration law judge in the asylum proceedings. See Singh, 470 F. Supp. 2d at 1065, 1068-70.

ORDER DEFERRING BOTH PARTIES'
MOTIONS FOR SUMMARY JUDGMENT         -8-

application at issue.

Defendants rely on another district court case out of the Southern District of New York for the proposition that a high volume of applications justifies a five-year delay. See Saleh v. Ridge, 367 F. Supp. 2d 508, 513 (S.D.N.Y. 2005). Defendants fail to point out that plaintiff's application to adjust status in Saleh was delayed as a result of a Congressionally-mandated cap of 10,000 on the number of asylees whose status may be adjusted to that of lawful permanent resident each year, in addition to the high volume of applications based on asylee status. See id. at 510, 513 (citing 8 U.S.C. § 1159(b)). Thus, in Saleh, USCIS had published a schedule setting forth the time periods during which it anticipated it would consider asylees' applications according to when such applications were filed. See id. at 513. The plaintiff in Saleh filed the lawsuit prior to the expected consideration period. See id. Here, defendants have pointed to no cap on the number individuals whose status may be adjusted to lawful permanent resident each year. Nor does the Court have any information regarding the average time between the filing of, and consideration of, adjustment of status applications for applicants generally, or plaintiff's class of applicant specifically.

Finally, defendants rely on a district court case from the Northern District of Texas, which held, in the naturalization context, that a 15-month delay was not unreasonable. See Alkenani v. Barrows, 356 F. Supp. 2d 652, 657 (N.D. Tex. 2005). The Alkenani Court in dicta suggested that "delays approximating two years may be unreasonable." Id. at 657 n.6. In the present case, plaintiff has waited over four years for a decision and remain in "perpetual limbo," id. at 657, without any particularized explanation from USCIS for the delay.

## IV. CONCLUSION

For all of the foregoing reasons, the Court DEFERS plaintiff's "Motion for Summary Judgment" (Dkt. #18) and defendants' "Cross-Motion for Summary Judgment" (Dkt. #21) and ORDERS defendants to provide the Court with particularized information that explains the over four year delay as to plaintiff's name check. Defendants shall submit this information to the

Court, either through declarations or via in camera review, by **October 29, 2007**. Any brief filed in connection with the new information shall not exceed six pages. No response to the supplemental briefing shall be filed by plaintiff unless requested by the Court. Defendants are on notice that the Court may sua sponte grant summary judgment in favor of plaintiff if defendants fail to provide the particularized information.

DATED this 17th day of September, 2007.

_____
Robert S. Lasnik
United States District Judge